IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| RANDALL BROWNING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:26-CV-00172-MJH |
| | ) | |
| v. | ) | Judge Marilyn J. Horan |
| | ) | |
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY A/K/A LIBERTY MUTUAL INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff, Randall Browning, filed the within action against Defendant, Liberty Mutual Personal Insurance Company a/k/a Liberty Mutual Insurance Company ("Liberty Mutual"), for claims of breach of contract (Count I), statutory bad faith (Count II), and statutory consumer protection violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III). (ECF No. 10). Defendant now moves for dismissal of Count III under Fed. R. Civ. P. 12(b)(6). (ECF No. 12). The motion is fully briefed (ECF Nos. 13, 14, and 15) and ripe for decision.

Upon consideration of Plaintiff's First Amended Complaint (ECF No. 10), Defendant's Motion to Dismiss (ECF No. 12), the respective briefs (ECF Nos. 13, 14, and 15), and for the following reasons, Defendant's Motion to Dismiss will be granted. Count III will be dismissed, with leave to amend Count III relative to only pre-sale conduct of the Defendant.

## I. BACKGROUND

Mr. Browning alleges that, on January 18, 2022, one week after he purchased a homeowners insurance policy ("the Policy") from Liberty Mutual, five frozen pipes burst and flooded his home. (ECF No. 10 at ¶¶ 12, 17–19). He reported the loss the very next day. *Id*. at ¶ 21. Liberty Mutual at first denied his claim. Then, after Mr. Browning hired a public adjuster, Liberty Mutual agreed to compensate him for the repairs and his temporary relocation. *Id.* at ¶¶ 20, 22–27. However, compensation for depreciation, and for the cost of additional structural work required by the local building code, were reserved pending completion of repairs. For more than three years, Liberty Mutual declined to release these funds, asserting that Mr. Browning's contractor was submitting "estimates" rather than final "invoices." Ultimately, Mr. Browning had to advance these costs out-of-pocket. *Id.* at ¶¶ 33–35, 40, 55–57.

Count III asserts two theories of deception under the UTPCPL. First, Mr. Browning alleges pre-sale "advertising violations"—that Liberty Mutual, through its written materials and its agent's false representations, advised that claims would be processed both professionally, and according to customary timelines, and that the Policy would provide depreciation recapture, ordinance and law compliance coverage, cost of repair, and housing displacement coverage. *Id.* at ¶¶ 8–12, 90, 92. As factual support, Mr. Browning attaches the letter and policy welcome packet that accompanied the Policy, each tied to its January 11, 2022 inception date, along with the Policy itself. *Id.* at Exs. 1–3. Second, he alleges post-sale "non-advertising violations"—that, in handling his claim, Liberty Mutual required pre-approval and additional proof of loss, mischaracterized his contractor's submissions, and failed to deliver the promised level of professionalism, all of which misrepresented the Policy's terms. *Id.* at ¶¶ 91, 93. Mr. Browning pleads that he relied upon Liberty Mutual's representations and thereby suffered an ascertainable loss. *Id.* at ¶¶ 96–97.

## II. RELEVANT STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court clarified that the plausibility standard introduced above should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); see also *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not lend credence to bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a Rule 12(b)(6) motion to dismiss is not whether the plaintiff will or may ultimately prevail, but rather, whether the plaintiff is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

When a court grants a motion to dismiss, it "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

## III. DISCUSSION

### *A. Count III—UTPCPL Claim Concerning Post-Sale Conduct*

Liberty Mutual maintains that Counts I and II afford Mr. Browning an adequate remedy, rendering Count III's UTPCPL claim inapplicable. Liberty Mutual argues that the conduct alleged in the Amended Complaint concerns only the handling of a particular insurance claim; and therefore, falls outside the UTPCPL because that conduct occurred after the sale of the Policy. Mr. Browning responds that the UTPCPL extends beyond advertising. In particular, he

argues that both advertising and post-advertising injuries are compensable under the statute's catch-all provision, 73 P.S. § 201-2(4)(xxi), and that the UTPCPL provides relief where claims handling is "egregious."

*Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540 (Pa. Super. Ct. 2020) squarely addresses the UTPCPL's application in the insurance context. The UTPCPL "applies to the sale of an insurance policy, it does not apply to the handling of insurance claims." *Wenk*, 228 A.3d at 550 (emphasis and citation omitted). Rather, Pennsylvania's bad-faith statute, 42 Pa. C.S. § 8371, "provides the exclusive statutory remedy applicable to claims handling." *Id.* Although the *Wenk* court held that "the Wenks are theoretically entitled to additional damages under the UTPCPL," this holding was confined to the Wenks' warranty claim against their remediation contractor—not their insurer. As to the insurer, *Wenk* affirmed that the UTPCPL simply does not apply. *Wenk*, 228 A.3d at 550–51. In addition, the Superior Court has further held the UTPCPL inapplicable to an insurer's denial of a coverage obligation, explaining that "the sale of the . . . [p]olicy is not at issue, merely the denial of [the] claim." *Ciavarella v. Erie Ins. Exch.*, No. 775 MDA 2022, 2023 WL 8111855, at *8 (Pa. Super. Ct. Nov. 22, 2023) (non-precedential) (citing *Wenk*, 228 A.3d at 550).

Here, Liberty Mutual allegedly received, investigated, denied, reversed, and withheld an insurance claim during a three-year period. Whatever may be said about the adequacy of that handling, all allegations concern post-sale conduct relating to an insurance claim. The Amended Complaint's non-advertising allegations all fall on the claims-handling side of this line. They describe how Liberty Mutual processed Mr. Browning's claim: requiring pre-approval for the code-related work and additional proof of loss, disputing his contractor's submissions, and failing to provide the allegedly promised degree of professionalism during claims evaluation. (ECF No.

10 at ¶¶ 91, 93). However protracted the processing of that claim became, Mr. Browning's allegations plainly concern its handling, for which § 8371, and not the UTPCPL, supplies the statutory remedy. Accordingly, Liberty Mutual's Motion to Dismiss will be granted, and Count III will be dismissed, to the extent that Count III rests on post-sale, non-advertising conduct.

*B. Count III—UTPCPL Claim Concerning Pre-Sale Conduct*

Liberty Mutual argues that the Amended Complaint's pre-sale allegations fail, because the documents upon which they rely were generated at or after the Policy's issuance, and because the Amended Complaint does not allege dates for when Liberty Mutual's agent made the alleged misrepresentations. (ECF No. 13, at 11–12). Mr. Browning responds that it is "entirely plausible" that Liberty Mutual described the product at the time of sale and that the January 11 documents merely provided "a recap upon delivery of the policy." (ECF No. 14, at 3–4). In the alternative, he requests leave to further amend. *Id.* at note 1.

Regarding pre-sale conduct, Mr. Browning cites to three false advertising provisions of the UTPCPL: 73 P.S. § 201-2(4)(v), (ix), and (x). (ECF No. 10 at ¶ 92). To state a claim for false advertising under the UTPCPL, "a plaintiff must allege: (1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (quotations omitted). However, puffery—"'exaggeration or overstatement expressed in broad, vague, and commendatory language'"—is not actionable under the UTPCPL. *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). To recover under the UTPCPL's private right of action, a plaintiff must also demonstrate that he justifiably relied

upon the defendant's deceptive practice, and that he suffered harm as a result of that reliance. *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001).

Here, Mr. Browning alleges pre-sale misrepresentations were made specifically to induce his purchase of the Policy. As an initial matter, the Amended Complaint pleads no facts from which the Court could conclude that any of the alleged misrepresentations preceded the sale. As to the letter, Mr. Browning's own pleadings identify it as being dated January 11, 2022, which was the Policy's inception date. Such a letter is, therefore, post-contractual. As to the purportedly pre-contractual representations made by Liberty Mutual's sales agent, Mr. Browning alleges only that Liberty Mutual's agent "expressly represented that Defendant is licensed in Pennsylvania," from which he infers implied assurances of professional and timely claims handling. (ECF No. 10 at ¶ 10). Nowhere does the Amended Complaint allege when those representations were made. In addition, although Mr. Browning alludes to other pre-sale communications, he does not plead any express content. Without such factual content, Mr. Browning's assertion that the misrepresentations preceded the sale is conclusory and insufficient to establish any UTPCPL actionable pre-sale conduct. *See* ECF No. 14, note 1. Because the UTPCPL reaches only conduct connected to the sale of the Policy, this omission also defeats Mr. Browning's pre-sale UTPCPL theory.

In addition, the pre-sale theory fails because the Amended Complaint identifies no expressly false or deceptive representation. The January 11th, 2022 letter referenced in the Amended Complaint utilizes general terms to describe Liberty Mutual's services and their purportedly high quality. The letter states, in pertinent part, that Liberty Mutual "take[s] pride in offering [Mr. Browning] excellent products with personal service at a competitive price." (ECF No. 10-1). Defendant argues that said representations are non-actionable puffery. As noted, the

January 11th, 2022 letter is a broad, vague, and subjective expression of general quality. Although whether a statement is puffery is ordinarily a question of fact, this letter presents statements “so clear” that the Court may resolve the question as a matter of law. *Commonwealth v. Golden Gate Nat’l Senior Care LLC*, 194 A.3d 1010, 1023–24 (Pa. 2018). The language at issue is precisely the kind of commendatory sales language that federal courts across circuits have consistently held non-actionable under Rule 12(b)(6).[1]

Further, Mr. Browning does not cite any specific Policy term that was misrepresented, nor does he allege any demonstrably false statement. The Amended Complaint alleges no mismatch between what was represented and what the Policy actually provided. Thus, the complaint fails to sufficiently allege any actionable UTPCPL misrepresentation pertaining to the sale of the policy.

Finally, the Amended Complaint does not allege that any purported mischaracterization concerned a material term, nor does it attempt to explain why the alleged misrepresentation made any difference in Mr. Browning’s purchasing decision. His allegations of reliance are conclusory and fail to connect any purported falsehood to his purchasing decision. As pled, the amended complaint fails to sufficiently plead facts to support the elements necessary to state a claim for false advertising as required under the UTPCPL. Mr. Browning therefore pleads no ascertainable UTPCPL claim that exists “as a result of” any allegedly deceptive advertising. *See Weinberg*, 777 A.2d at 446.

---

[1] *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (holding that claims of "top-quality," "innovative," and "dependable" products with "great warranties" and "excellent service and support" are "conclusory and highly subjective" and "neither measurable nor concrete" and dismissing consumer fraud claims under Rule 12(b)(6)); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 416 (E.D. Pa. 2016) (finding that online advertisements promising "affordable, responsible energy" constitute "mere puffery" that "cannot support a claim under the UTPCPL" and granting motion to dismiss under Rule 12(b)(6) as to advertising claims).

Accordingly, Liberty Mutual's Motion to Dismiss, relative to pre-sale advertisements in support of a UTPCPL claim, will be granted. Count III of the amended complaint will be dismissed.

*C. Leave to Amend*

Finally, Mr. Browning requests leave to file a second amended complaint. (ECF No. 14, note 1). Amendment to Count III as to claims-handling conduct would be futile for the reasons stated above. However, because the Court cannot deem that an amendment to Count III to plead facts to establish sufficient, actionable pre-sale conduct would be futile or inequitable, the Court will grant leave to amend Count III as to pre-sale conduct.

**CONCLUSION AND ORDER**

For the foregoing reasons, Liberty Mutual's Motion to Dismiss (ECF No. 12) is GRANTED. Count III is DISMISSED. Mr. Browning is granted leave to amend his UTPCPL claim with respect to only pre-sale conduct. Any amendment shall be filed on or before August 27, 2026. Should no amendment be filed within that period, Liberty Mutual shall file an answer on or before September 10, 2026.

DATED this 13th of August, 2026.

BY THE COURT:

**MARILYN J. HORAN**
United States District Judge